

January 27, 2022

**Via Electronic Mail**

Ms. Marie Kennington-Gardiner
Regional Administrator, Eastern Region
Federal Aviation Administration
1 Aviation Plaza
Jamaica, NY 11434-4809
marie.kennington-gardiner@faa.gov

**RE: East Hampton Airport (HTO) Temporary Closure and Re-Opening**

Dear Ms. Kennington-Gardiner:

The Eastern Region Helicopter Council (ERHC), Helicopter Association International (HAI), General Aviation Manufacturers Association (GAMA) and the National Business Aviation Association (NBAA) would like to express our concern with the recent developments at East Hampton Airport (HTO).  As you are aware, the town of East Hampton, New York is the sponsor of HTO.  On January 20, 2022, East Hampton's Town Board adopted a resolution that plans to close and deactivate HTO effective February 28, 2022 and re-open what the Town calls a "new airport" effective March 4, 2022 (Exhibit A). The "new airport" will be established on the same footprint as HTO and utilize the same infrastructure, approach procedures and other items built, developed and maintained with federal funds.

We understand that this strategy has been adopted by East Hampton premised on a November 6, 2020 letter to the Town from the FAA Eastern Region's Airports Division (Exhibit B).  In its "Option 2", the letter postulated that, by closing and re-opening the airport, East Hampton could "extinguish" certain statutory obligations - including the prohibition on exclusive rights embodied in 49 U.S.C. § 40103(e), as well as the prohibition on revenue diversion set forth in 49 U.S.C. § 47133.  In public discussion, the Town and its counsel (Cooley LLP) further have indicated that East Hampton, after the closure and re-opening, specifically intends to impose operational restrictions that otherwise would be prohibited by Section 40103(e) (i.e., constructive exclusive rights for certain preferred operators), as well as to make transfers of funds from airport accounts to municipal accounts that otherwise would be prohibited by Section 47133.

We believe that this strategy is fundamentally flawed and respectfully ask that the FAA reevaluate its November 2020 guidance and affirm to the Town and its counsel that it is not, in fact, viable.  HTO cannot – via what is in effect a sleight-of-hand maneuver – be released from long-standing federal requirements, and on that basis convert HTO to a private-use airport.  Moreover, the Town also does not appear to have a plan to establish a "new airport" by March 4, an issue that also should be addressed by the FAA.

- First, it does not appear that the language of Section 40103(e) – which since 1938 has prohibited exclusive rights at airports that ever have accepted federal aid – should be impacted by a short-term closure of an airport.  Such a closure does not appear to change the core identity of an airport, or the national interest

Ms. Marie Kennington-Gardiner
East Hampton Airport (HTO) Temporary Closure and Re-Opening
January 27, 2022
Page 2

therein; e.g., in this case HTO would remain the same facility upon which federal funds have been expended.  See, e.g., FAA Order 5190.6B, § 4.6(h)(1) (prohibition on exclusive rights remains in effect "as long as the airport remains an airport").  We also note that in other contexts, courts routinely conclude that fleeting changes to the status of public facilities do not exempt them from ongoing government requirements.  See, e.g., Horne v. Government Emp. Ins. Co., 207 S.E.2d 636 (Ga. App. 1974) (public road temporarily used for a race remained a public road for insurance purposes); Illinois Cent. R. Co. v. Illinois Commerce Comm'n, 75 N.E.2d 23 (Ill. 1947) (temporary suspension of train service by government as war measure did not provide a basis for permanent suspension by railroad, which required government approval).  Accordingly, the FAA should address whether the notion that a paper closure and re-opening of HTO – for 3 days, or for any time period – would "extinguish" 49 U.S.C. § 40103(e) is actually correct.  We respectfully submit that it is not.

- Likewise, Section 47133 was adopted by Congress in 1996 to ensure that revenue diversion was prohibited at "all airports that have been the subject of Federal assistance, regardless of whether the airport is currently subject to an FAA grant agreement."  See 78 Fed. Reg. 69789, 69790 (Nov. 21, 2013).  See also Meyer v Cincinnati, Ohio, FAA no 16-12-14, Director's Determination (Dec. 4, 2014) (airport was only released from statutory prohibition on revenue diversion after it was "permanently" closed).  We are not aware of any guidance, from FAA or in the statute's legislative history, to the effect that the federal interest in ensuring that revenue raised at an airport remains on-airport can be eviscerated via the strategy now being pursued by East Hampton – i.e., a nominal closure that effects no changes to the facilities in which federal dollars have been invested.  Accordingly, the FAA should address whether the notion that a paper closure and re-opening of HTO – for 3 days, or for any time period – would "extinguish" 49 U.S.C. § 47133 is actually correct.  We respectfully submit that it is not.

- Additionally, the November 6, 2020 letter does not even suggest that the closure and re-opening of HTO would exempt the airport from the obligations of the Airport Noise and Capacity Act of 1990 (ANCA; 49 U.S.C. § 47524).  ANCA was intended to apply to general aviation airports to the same extent as air carrier airports – and has specifically been confirmed to be applicable to HTO, as well as to be independent of the AIP-based grant assurances.  See FOEHA v. East Hampton, 841 F.3d 133 (2d Cir. 2016).  Thus, even if a short-term closure of HTO were to render Section 40103(e) and Section 47133 ineffective, it appears that any access restrictions at HTO – be they direct or indirect – would still need to comply with the requirements of ANCA and be implemented consistent with 14 C.F.R. Part 161.  See, e.g., Millard Refrigerated Services, Inc. v. FAA, 98 F.3d 1361 (D.C.Cir. 1996). We respectfully submit that the implication that the paper closure and re-opening of HTO – for 3 days, or for any time period – would "extinguish" ANCA is incorrect and also ask the FAA to address the applicability of ANCA.

- Finally, the Town asserts that effective March 4, 2022, it will be the sponsor of a "new airport" – even though that airport will be comprised of the exact same facilities as HTO.  But, above issues aside, there is no indication that East Hampton has engaged in any of the preparation necessary to establish a new airport.  For example, although the closure of HTO appears to require 30 days-notice to the FAA pursuant to 14 C.F.R. § 157.5(b)(2), the opening of a new airport requires 90 days-notice pursuant to 14 C.F.R. § 157.3(a) and 157.5(a)(1); it is literally impossible for East Hampton to provide the latter notice consistent with FAA requirements.  Likewise, the instrument approach procedures for HTO were developed with federal funds, and it is not clear that they could be instantaneously transferred to a new airport - and/or transferred without a reimbursable agreement with the Town.  *See, e.g.,* https://www.faa.gov/air_traffic/flight_info/aeronav/procedures/ifp_initiation/ifp_requirements/.

- Additionally, there is no evidence that East Hampton has met or even considered the requirements for opening a new private airport under New York law, including Title 17, Part 75 of the state's regulations,

Ms. Marie Kennington-Gardiner
East Hampton Airport (HTO) Temporary Closure and Re-Opening
January 27, 2022
Page 3

which require a determination by the Commissioner of Transportation. Accordingly, the FAA should address whether the Town's proposition that it can open a "new airport" on the footprint of HTO simply by filing a new Form 7480-1 is actually correct. We respectfully submit that it is not.

We are concerned that if allowed to proceed, this path to extinguish statutory obligations and circumvent ANCA will create a dangerous national precedent. We appreciate your prompt attention to these issues and consideration of our comments; given that the Town has submitted their request and the associated forms and is making preparations for the "new airport," it is important for stakeholders and the public that the FAA address these issues as expeditiously as possible.

For over a decade pilots and operators of all types of aircraft at HTO have demonstrated commitment to fly neighborly and to develop procedures and routes to reduce noise impacts on surrounding communities, affirming to the Town that the industry is committed to find solutions to be a good neighbor with surrounding residents. Rather than finding ways to get around a robust framework that is in place to protect our national airport infrastructure, we invite the FAA and the Town to engage with the operators to jointly find additional solutions to ensure a long, viable future for HTO. We firmly believe we can succeed if the FAA, the Town and the aviation industry all channel our energy towards this common goal.

Sincerely,

*Tom McCormick, Chair, Board of Directors*
Eastern Region Helicopter Council

*Alex Burkett, Director of Safety and Regulatory Affairs*
General Aviation Manufacturers Association

*Cade Clark, Vice President, Government Affairs*
Helicopter Association International

*Alex Gertsen, Director, Airports & Ground Infrastructure*
National Business Aviation Association

CC:
- Steven Jones, Deputy Regional Administrator, Eastern Region (steven.jones@faa.gov)
- Mary McCarthy, Assistant Chief Counsel, Airports & Environmental Law (mary.m.mccarthy@faa.gov)
- David Fish, Director, Eastern Region Airports Division (david.fish@faa.gov)
- Kevin Willis, Director, Office of Airport Compliance and Management Analysis (kevin.willis@faa.gov)
- Lorraine Herson-Jones, Manager, Office of Airport Compliance (lorraine.herson-jones@faa.gov)